B. G. BONDS, EXECUTOR, AND ANOTHER v. LEAH FOSTER AND
OTHERS.

1. F., the owner of a female slave, lived in concubinage with her in Louisi-
   ana, whence, in 1847, he took her and her children to Ohio, where he
   manumitted them by deed. He left them in Ohio for about four years,
   and supported them during the time, returning there himself about once
   in each year, and on these occasions staying with the family and cohabit-
   ing with the woman. He then brought the woman and children from
   Ohio, and removed with them to Texas, where he continued to reside
   until his death, about the 1st of January, 1867; and during this period
   he had the woman and children at his residence, and cohabited with the
   woman. In 1866 he made his will, and devised the bulk of his property
   to them, but provided in it that if the woman married she should forfeit
   her share. After his death his executor reported his estate insolvent,
   and, by order of the probate court, sold his homestead place for the pay-
   ment of debts. This suit was brought by the woman for herself and her
   minor children, against the executor and the purchaser of the homestead,
   alleging that the plaintiffs were the widow and minor children of the deced-
   ent, and as such entitled to the homestead and other exempted property,
   and praying judgment therefor. Being submitted for trial by the dis-
   trict judge without a jury, he decreed to the plaintiffs the relief prayed
   for, on the ground that a putative marriage between F. and the woman
   was established by the facts above indicated. *Held,* that there having
   been no legal impediment to a marriage between the parties in the State
   of Ohio, their cohabitation while there might have raised a presumption
   of a marriage there, and this would not be destroyed by their subsequent
   removal to and residence in Texas, where the law then prohibited mar-
   riage between a person of the white and one of the black race.

2. Since the adoption of the Fourteenth Amendment to the Constitution of
   the United States, a marriage between a white man and a negress may,
   it seems, be established by proof of cohabitation, etc.

3. A devise to a woman, made forfeitable in case she should marry after the
   testator's death, is a cogent circumstance, in connection with proof of
   long cohabitation, to establish a marriage between the testator and the
   devisee.

APPEAL from Fort Bend. Tried below before the Hon. L.
Lindsay.

In the opinion of the court and the first head-note, the facts
of the case, though much condensed, are sufficiently stated.

*Geo. Quinan* and *P. E. Peareson*, for the appellants.

*Gustave Cook*, for the appellees.

WALKER, J.  This case was submitted to his honor the district judge, on the law and the facts, and his judgment is appealed from to this court.

A. H. Foster many years ago resided in the State of Louisiana, and, among other slaves, was the owner of one Leah, whom he made either his wife or his concubine.  The question here presented is, was Leah the wife of Foster, and are her children the offspring of his loins?

By the laws of Louisiana in force at the time Foster resided there, he could not have made Leah his lawful wife; but we learn, from the statement of facts, that he took the woman and several children of hers to the State of Ohio, and established them in a home in the city of Cincinnati, where he provided them with the necessaries of life; he also emancipated the woman and her children.  They remained in the city of Cincinnati four years, Foster spending a portion of each year with them, and, according to the testimony of Fields Foster, the eldest son, he spent his nights and frequently took his meals with the family.  After the expiration of four years, Foster brought this family away from Cincinnati, and with them removed to the State of Texas.

By the laws of Ohio, the woman having been emancipated, the parties may have been legally married, or their conduct may have been such as to raise a legal presumption of a marriage; and if so, their coming to the State of Texas, where the law prohibited marriage between the white and black races, did not, *per se*, operate a dissolution of the marriage, although, at the time, none of the marital rights of the parties could have been enforced by the laws of Texas.

But the parties continued to live together, habiting themselves as man and wife, until after the law prohibiting such a marriage had been abrogated by the 14th Amendment to the

Constitution of the United States. A marriage might then be presumed in the State of Texas upon the same state of facts, which would raise a similar presumption in Indiana or Ohio.

After Foster came to the State of Texas, bringing Leah and her children with him, Leah became the mother of several other children by Foster, two of whom are the minors named in the petition. The District Court adjudged the parties to be man and wife, from the evidence adduced upon the trial, and Leah, as the widow, entitled to a homestead. It is contended on the part of appellants, that the evidence did not warrant this finding.

The evidence, no doubt, has its weak points and its strong ones. That Foster himself regarded this woman and her family in the light of a wife and children, cannot be doubted; perhaps the strongest evidence to prove a marriage relation is furnished by his will. He not only devises his property mainly to this woman and children, but he provides by a clause (often found in the testaments of jealous husbands) that if Leah shall marry, she is to forfeit all her right and interest in his estate. We confess it is somewhat difficult to account for this inhibition of a second marriage in any case, but it would be still more difficult to find a reason for this kind of embargo upon marital commerce in the will of one who had not been the husband of her upon whom he intends to place the fate of Jephtha's daughter. But the learned judge who has decided this case was much more competent to give due weight and consideration to the evidence than any ordinary jury would have been, and we certainly should not disturb their verdict if they had found the facts as the court found them.

We are not called on in this case to give any construction to the 27th Section of the 12th Article of the Constitution, and, therefore, reserve any opinion which we may be called on hereafter to render, in construing that part of our organic law. The judgment of the District Court is affirmed.

Affirmed.